UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| KIM H. CULBERTSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 1:11-CV-00206 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Kim Culbertson appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Culbertson was last insured for DIB on September 30, 1996 (her "DLI") (Tr. 17, 34-35); therefore, she must establish that she was disabled as of that date to recover DIB benefits, *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). In November 2007, Culbertson filed an application for DIB, alleging disability more than twelve years earlier, as of September 30, 1995. (Tr. 159-60, 193.) Her claim was denied initially and upon reconsideration, and Culbertson requested an administrative hearing. (Tr. 63-66, 69-71, 73-75, 77-78 .) Administrative Law Judge ("ALJ") Michelle K. Lindsay conducted a hearing on December 16,

---

[1]All parties have consented to the Magistrate Judge. (Docket # 14); *see* 28 U.S.C. § 636(c).

1

2009, at which Culbertson, who was represented by counsel; Culbertson's husband; a friend; and a vocational expert testified. (Tr. 15, 30-60.)

On January 29, 2010, the ALJ rendered an unfavorable decision to Culbertson, concluding that she was not disabled through September 30, 1996, her DLI,[2] because she could have performed a significant number of jobs in the national economy. (Tr. 15-23.) The Appeals Council denied Culbertson's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)

Culbertson filed a complaint with this Court on June 15, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) Culbertson's sole argument on appeal is that the ALJ erred by not discussing the opinion of Dr. David Lombard, a clinical psychologist who examined Culbertson in January 2009—almost fourteen years after her alleged onset date and thirteen years after her DLI. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 8.)

## II. FACTUAL BACKGROUND[3]

### *A. Background*

As of her DLI, Culbertson was thirty-nine years old (Tr. 22), had a high school education and completed two years of college (Tr. 37-38), and possessed work experience as a receptionist and medical laboratory technician (Tr. 21, 57). She alleges that she became disabled due to hearing loss, sinus and other infections, colitis or irritable bowel syndrome, depression, and

---

[2] At one time, the record reflected that Culbertson's DLI was September 30, 1995, but, at the hearing, the ALJ stated that, after running the quarters of coverage, her DLI was actually September 30, 1996. (Tr. 34-35.)

[3] In the interest of brevity, this Opinion recounts only the portions of the 1235-page administrative record necessary to the decision.

2

anxiety.  (Opening Br. 2.)

## B. *Summary of the Relevant Medical Evidence*[4]

In September 1994, after the birth of her youngest child, Culbertson complained to Dr. Matthew Sprunger, her obstetrician/gynecologist, of depression, anxiety, difficulty coping, crying easily, and not getting out much.  (Tr. 473.)  Dr. Sprunger prescribed Xanax and Prozac.  (Tr. 473.)  The following year, Culbertson reported problems with premenstrual syndrome ("PMS") and was again prescribed Xanax in November 1995.  (Tr. 440.)  In February 2006, Culbertson reported doing well on Xanax and indicated that she wanted to take Xanax two additional days into her menstrual period.  (Tr. 440.)  During her yearly exam in June 2006, Dr. Sprunger noted that she had PMS and anxiety, but that she was using Xanax with good results.  (Tr. 438.)

In April 2008, Dr. Donna Unversaw, Ph.D., a state agency reviewing psychologist, opined that, although Culbertson alleged depression and anxiety, there was not sufficient evidence to establish disability prior to the DLI (which, at that point, was believed to be September 30, 1995).  (Tr. 897-909.)  Her opinion was later affirmed by a second state agency psychologist.  (Tr. 998.)

In January 2009, Dr. David Lombard, Ph.D, a clinical psychologist, interviewed Culbertson and administered three psychological tests.  (Tr. 1210-16.)  He completed a report of his evaluation in March 2009 (Tr. 1210), and Culbertson submitted the report to the Social Security Administration (SSA) on December 2, 2009, two weeks before the hearing.  (Tr. 1209.)

---

[4] As Culbertson is not challenging the ALJ's findings related to her physical limitations (Opening Br. 2 n.1), only the medical evidence relevant to her mental conditions is summarized below.

Culbertson reported to Dr. Lombard that, from 1980 to 1986, she worked as a receptionist in a physician's office and left because her boss was an alcoholic and verbally abusive. (Tr. 1211.) From 1987 to 1991, she worked part time at a hospital X-ray department and an ophthalmologist's office; she stated that she left the latter job because the ophthalmologist wanted her to work too many hours. (Tr. 1211.) Culbertson further reported that she worked part time at a used clothing store in 1999; she stated that she worked after hours and alone, which helped her manage her anxiety and depression, until the business changed directions and she was no longer needed. (Tr. 1211.)

Culbertson also told Dr. Lombard that she suffered anxiety and panic attacks due to her hearing loss and that, after her children were born, she became very anxious because she was afraid she would not hear them crying at night. (Tr. 1212.) Moreover, after the birth of her second child in 1992, Culbertson reported that she began suffering from panic attacks, significant anxiety, and debilitating depression that prevented her from doing anything around the house. (Tr. 1212.) At that point, Culbertson recalled starting counseling with Vivienne Smith, a Christian counselor at Broadway Christian Church. (Tr. 1212; *see* Tr. 1001.) She saw Ms. Smith for five years and was not prescribed any medications.[5] (Tr. 1212.) According to Culbertson, Ms. Smith died, and her records were destroyed, leaving no documentation of her treatment from those years. (Tr. 1212.)

Culbertson further recounted to Dr. Lombard that at "some point" she became very frustrated with her anxiety so she went to her family physician, who prescribed her medications. (Tr. 1212.) She also took her sons for mental health counseling and eventually had treatment

---

[5] Jenny Staley, Ms. Smith's former secretary at Broadway Christian Church, did not remember the years Culbertson saw Ms. Smith, but recalled Culbertson being a regular counselee for less than a year or two. (Tr. 1001.)

4

with that counselor after the boys' sessions. (Tr. 1212-13.) Culbertson next recalled seeing Dr. Wieland for counseling. (Tr. 1213.) Once again, initially the sessions were for her children, but then became primarily for her. (Tr. 1213.) Those sessions allegedly stopped in November 2008, and Culbertson reported no other history of mental health counseling. (Tr. 1213.)

During her evaluation with Dr. Lombard in January 2009, Culbertson stated that she had experienced panic attacks for many years and described them as lasting fifteen to thirty minutes and involving shortness of breath, uncontrolled shaking, racing thoughts, crying, and fears of death. (Tr. 1213.) She also indicated that she currently experiences one to three panic attacks per month. (Tr. 1213.) She also reported becoming depressed before and after her panic attacks and that her medical illnesses increase her pain and depression. (Tr. 1213.) As for her depression symptoms, Culbertson stated that she often feels no desire to take care of herself, look good, engage in life, or interact with others, and that she is sad most of the time, wanting to sleep the day away. (Tr. 1213.)

Dr. Lombard also administered three psychological tests to Culbertson in January 2009. (*See* Tr. 1214-15.) The Minnesota Multiphasic Personality Inventory (version 2) ("MMPI–II") indicated that it was most likely a valid assessment of her current psychological functioning and that "she was experiencing significant mental health symptoms at this time." (Tr. 1214.) Her responses further indicated, among other things, a chronic pattern of anxiety, tension, and fear and clinically significant depression. (Tr. 1214.)

The Personality Assessment Inventory ("PAI") was also given to Culbertson during this January 2009 evaluation. (Tr. 1215.) Its validity scores indicated that it was most likely a valid assessment of Culbertson's current psychological functioning; her responses suggested that she

5

had experienced long-term significant depression; that she was experiencing significant anxiety; that changes in routine or unexpected events cause her significant anxiety and panic attacks; and that she had a long-term history of panic attacks and of anxiety and panic resulting in negative impacts on her ability to concentrate and attend to her surroundings. (Tr. 1215.)

Finally, Dr. Lombard administered the Millon Clinical Multiaxial Inventory (version 3) to Culbertson. (Tr. 1215.) Her responses indicated a chronic history of anxiety and depression, symptoms of both that were most likely debilitating and affected most areas of her life, depression that includes significant feelings of hopelessness and helplessness, and anxiety that has caused her to avoid social situations and depend on others in significant ways. (Tr. 1215.)

Based on Culbertson's interview and testing results, Dr. Lombard concluded in his March 2009 report that she was currently suffering from major depressive disorder (recurrent and chronic) and panic disorder and that her symptoms were of a long standing nature. (Tr. 1215.) He further opined that Culbertson has been suffering from depression and panic disorder symptoms since 1986 after leaving her job working for the physician, that her symptoms were initially of a moderate severity and progressively got worse over the years, and that she was able to work part time where she did not have to deal with the public. (Tr. 1215.) Ultimately, Dr. Lombard determined that Culbertson's anxiety and depression symptoms were so significant that it was not possible for her to maintain any full-time employment after 1986. (Tr. 1215.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

6

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record, but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

§ 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[6] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, with respect to steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On January 29, 2010, the ALJ rendered her decision. (Tr. 15-23.) At step one of the analysis, the ALJ found that Culbertson had not engaged in substantial gainful activity since her alleged onset date through her DLI. (Tr. 17.) The ALJ then concluded at step two that Culbertson suffered from one severe impairment—bilateral hearing loss. (Tr. 17.) The ALJ found that Culbertson's medically determinable mental impairment of anxiety did not cause more than minimal limitation in her ability to perform basic mental work activities and was

---

[6] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

8

therefore non-severe; she further considered the four broad functional areas, finding only mild limitations in her activities of daily living; social functioning; and concentration, persistence, or pace; and no episodes of decompensation. (Tr. 18.)

At step three, the ALJ determined that Culbertson's impairment or combination of impairments did not meet or medically equal a listing. (Tr. 19.) Before proceeding to step four, the ALJ determined that Culbertson's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the following RFC:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: [s]he can only perform work that does not require acute hearing; she cannot work in noisy environments such as fast food restaurants at rush times or factory floors; and she requires work that is not dependent on frequent oral communications between coworkers, supervisors or the general public.

(Tr. 19.) Moving onto step four, the ALJ found that Culbertson was unable to perform any past relevant work. (Tr. 21-22.) At step five, however, the ALJ determined that, through her DLI, Culbertson could have performed a significant number of jobs within the economy, including mail sorter, hand packer, and assembler of electronics equipment. (Tr. 22-23.) Therefore, Culbertson's claim for DBI was denied. (Tr. 23.)

### C. Any Error the ALJ Made by Failing to Discuss Dr. Lombard's Opinion Is Harmless

Culbertson argues that the ALJ erred by not discussing Dr. Lombard's opinions that her symptoms were of a long standing nature and that, due to her mental problems, she was not able to maintain full-time employment after 1986. (Opening Br. 8.) She further contends that this error is harmful because the ALJ found that she was unable to perform her past relevant work, and a person limited to part-time work is disabled at step five. (Opening Br. 8.) Culbertson's

9

argument, however, does not warrant a remand of the Commissioner's decision.

While the Commissioner must "evaluate every medical opinion [it] receive[s]," 20 C.F.R. § 404.1527(c), the ALJ need not discuss or make a written evaluation of every piece of evidence, *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). At the same time, an ALJ may not select and discuss only that evidence which favors her ultimate conclusion or ignore an entire line of evidence that is contrary to the ruling. *Golembiewski*, 322 F.3d at 917; *Herron*, 19 F.3d at 333; *Anderson v. Astrue*, No. 1:10-cv-00587-SEB-MJD, 2011 WL 3739257, at *4 (S.D. Ind. Aug. 23, 2011). Although the regulations do not require the ALJ to explicitly mention every doctor's name and every detail in her report, "when there is reason to believe that an ALJ ignored important evidence—as when an ALJ fails to discuss material, conflicting evidence—error exists." *Walters v. Astrue*, 444 F. App'x 913, 917 (7th Cir. 2011) (unpublished); *see McKinzey*, 641 F.3d at 891 (finding error when ALJ failed to consider opinion of state agency physician). Ultimately, the ALJ must review the record fairly and must articulate, at least at some minimal level, her analysis of the evidence to allow this Court to trace the path of her reasoning and to be assured that she considered the important evidence. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *see Herron*, 19 F.3d at 333.

At the same time, "administrative error may be harmless" and "[the Court] will not remand a case to the ALJ for further specification when [it is] convinced that the ALJ will reach the same result." *McKinzey*, 641 F.3d at 892 (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). Doing so would be a waste of time and resources for both the Commissioner and the claimant. *Id.* Accordingly, "[i]f it is predictable with great confidence that the agency will

reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marsh that support, then remanding is a waste of time" and, therefore, not appropriate. *Spiva*, 628 F.3d at 353; *see also McKinzey*, 641 F.3d at 892 (stating if a review of the records convinces the Court that "no reasonable ALJ would reach a contrary decision on remand," then a remand would not be appropriate); *Walters*, 444 F. App'x at 919 (noting that the Court "must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless").

In the instant case, Dr. Lombard concluded in March 2009, after interviewing and performing psychological tests on Culbertson in January 2009, that Culbertson *currently* suffered from major depressive disorder (recurrent and chronic) and panic disorder and that her symptoms were of a long standing nature. (Tr. 1215.) From the interview and testing results, at least two of which assessed Culbertson's *current* psychological functioning (*see* Tr. 1214-15), Dr. Lombard opined that Culbertson's anxiety and depression symptoms were so significant that it was not possible for her to maintain any full-time employment after 1986 (Tr. 1215). As Culbertson states, the ALJ did not mention or discuss Dr. Lombard's March 2009 opinion in her decision.

But error exists "when there is reason to believe that an ALJ ignored *important* evidence—as when an ALJ fails to discuss *material*, conflicting evidence," *Walters*, 444 F. App'x at 917 (emphasis added), or when the ALJ fails to articulate her analysis of the evidence to allow the Court to be assured she considered the *important* evidence, *Diaz*, 55 F.3d at 307. First, an opinion penned by a psychologist who examined Culbertson once almost thirteen years after her DLI and fourteen years after her alleged onset date, does not seem particularly material

or important. Moreover, Dr. Lombard's opinion that Culbertson was unable to maintain full-time employment since 1986, twenty-three years before his evaluation of Culbertson, was based on one 2009 interview consisting of Culbertson's self-report of mental health counseling and treatment and three psychological tests, at least two of which evaluated Culbertson's current psychological functioning as of January 2009. (*See* Tr. 1212-13 (where Dr. Lombard merely recorded under "mental health history" what Culbertson reported to him about her mental health counseling and treatment since approximately 1992), 1214-15 (noting for the MMPI-II and PAI that the validity scales indicated that each of these was most likely a valid assessment of Culbertson's *current* psychological functioning). As such, Dr. Lombard's March 2009 opinion does not seem material or important as to whether Culbertson was disabled as of September 30, 1996. *See Rubio v. Astrue*, No. 10 C 6529, 2011 WL 3796755, at *9 (N.D. Ill. Aug. 24, 2011) ("[T]he Seventh Circuit has recognized that worsening of a claimant's condition after the date last insured does not provide a basis for granting benefits during the relevant time period." (citing *Thomas v. Astrue*, 352 F. App'x 115, 116 (7th Cir. 2009) (unpublished)); *see also Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount to merely a recitation of a claimant's subjective complaints.").

      Even assuming that the ALJ erred by not discussing Dr. Lombard's opinion, a remand would not be warranted because any error would be harmless and would not lead to a different result on remand. Once again, Dr. Lombard evaluated Culbertson one time almost thirteen years after her DLI. His report does not indicate that he considered any earlier medical records, but rather seems based on Culbertson's self-report of her mental health history and treatment and

12

three psychological tests, at least two of which were explicitly measuring her current psychological state in January 2009. In such circumstances, no reasonable ALJ would reach a different conclusion as to whether Culbertson was disabled as of September 30, 1996. *See Hoover ex rel. Hoover v. Astrue*, No. 10-832-JPG-CJP, 2012 WL 482226, at *7 (S.D. Ill. Jan. 6, 2012) (holding that no reasonable ALJ would reach a contrary decision on remand based on the opinion of a doctor who first saw the claimant more than a year after the DLI, reviewed records post-dating the DLI, opined on the claimant's abilities in the present tense, and did not purport to assess the claimant's abilities as of the DLI).

While Dr. Lombard did purport to assess Culbertson's abilities before her DLI, he opined as far back as 1986—nine years before her alleged onset date, ten years before her DLI, and twenty-three years before he even evaluated her—concluding that her anxiety and depression symptoms were so significant that it was not possible for her to maintain any full-time employment after 1986. Although retrospective opinions are permissible, "[a] retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period." *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). The evidence concerning Culbertson's anxiety and depression contemporaneous with the eligible period—from September 30, 1995, to September 30, 1996—consists of records indicating that she was on Xanax for PMS (Tr. 440, 473) and had anxiety (Tr. 438), but was using Xanax with good results (Tr. 438). Based on the record as of April 2008, Dr. Unversaw, a state agency psychologist, found there was insufficient evidence to establish disability prior to September 30, 1995 (Tr. 909), which was later affirmed by a second state agency psychologist (Tr. 1044). According to Culbertson's self-report, which was contained in Dr. Lombard's March 2009 opinion and submitted to the

13

SSA in December 2009 (Tr. 1209), she also experienced panic attacks and significant anxiety, and debilitating depression after the birth of her second child in 1992 and began seeing Ms. Smith, a Christian counselor, whom she saw for the next five years. (Tr. 1212.) Culbertson could not provide any records of this therapy because Ms. Smith had passed away and her records were destroyed. (Tr. 1212.) She also reported seeing two other counselors (Tr. 1212-13), but these would appear to be after the DLI, as Culbertson's counseling with Ms. Smith presumably ran from 1992 to 1997, if Culbertson's report is correct.

Therefore, while the medical evidence indicates that Culbertson experienced some anxiety before her DLI, it does not support a finding that her anxiety was disabling. *See Tonsor v. Comm'r of Soc. Sec.*, No. 09-cv-1283, 2011 WL 1231602, at *5 (C.D. Ill. Mar. 28, 2011) (finding that no error when there was no medical evidence prior to the DLI that would support a finding that the claimant's headaches were disabling). While Culbertson was prescribed Xanax, she had good results from it. (Tr. 438.) Accordingly, based on this record, the ALJ considered the four broad functional areas and concluded that Culbertson's anxiety did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore non-severe. (Tr. 18.) As regards her depression, the ALJ found that there was no medical evidence of depression prior to the DLI. (Tr. 19.) Thus, rather than failing to address an entire line of medical evidence material to the disability determination, the ALJ merely omitted discussion of Dr. Lombard's extremely retrospective opinion, a single omission that is ultimately harmless. *See Adams v. Astrue*, No. 1:06-CV-393 RM, 2009 WL 1404675, at *2 (N.D. Ind. May 18, 2009) ("A single omission might be harmless error, but a failure to address an entire line of medical evidence material to the disability determination is not." (citations omitted)).

Even if the ALJ had considered Dr. Lombard's opinion, and Culbertson's self-reports contained within, no reasonable ALJ would have changed her decision. The fact that Culbertson saw a counselor during the eligible period does not automatically make her anxiety severe or establish depression prior to her DLI, and, unfortunately for Culbertson, records no longer exist for this counseling. *See Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a)) (noting that the claimant bears the burden of producing evidence of her disability). As for Dr. Lombard's conclusions in the March 2009 report, he found that she was *currently* suffering from major depressive disorder (recurrent, chronic) and panic disorder and that her symptoms were of a "long standing nature." (Tr. 1215.) Simply stating that her symptoms were of "long standing nature" does not establish they existed prior to the DLI or that they were disabling.

And, as noted above, Dr. Lombard's opinion that her anxiety and depression symptoms were so significant that it was not possible for her to maintain any full-time employment after 1986 was penned twenty-three years after the fact and after only one evaluation of Culbertson thirteen years after her DLI. Moreover, Dr. Lombard did not provide an RFC opinion or opine as to any disabling limitations, but simply stated that Culbertson had been unable to maintain full-time work after 1986. *See Mellott v. Comm'r of Soc. Sec.*, No. 3:11-CV-92-TLS, 2012 WL 645915, at *4 (N.D. Ind. Feb. 28, 2012) (finding the ALJ's failure to address a state agency examining physician's opinion that the claimant did not appear to be a suitable candidate for work harmless when the opinion did not provide an RFC opinion or opine as to any disabling limitations); *see also Wulf v. Astrue*, No. 09 C 6505, 2011 WL 1642522, at *16 (N.D. Ill. May 2, 2011) (finding that because a treating physician's opinions concerning the claimant's loss of

15

mobility did not provide any details regarding the limitations, it was not likely that consideration of these opinions would have caused the ALJ to reach a different decision).

Therefore, considering the extremely retrospective nature of Dr. Lombard's opinion and the basis for it—Culbertson's largely uncorroborated self-report of mental health counseling and treatment and three psychological tests performed in January 2009—this Court is convinced that the ALJ would reach the same result on remand; as such, any error the ALJ made was harmless, and the Court declines to waste time and resources in remanding this decision. *See McKinzey*, 641 F.3d at 892; *Spiva*, 628 F.3d at 353; *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in question of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Culbertson.

SO ORDERED.

Enter for this 4th day of May, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
